# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Meltzer, Purtill & Stelle LLC**,<br><br>Plaintiff,<br><br>v.<br><br>**1400 Milwaukee Avenue Owner LLC**, **GoodHomesCo LLC**, **GoodHomes Communities LLC**, **David Mitchell**, **Ziel Feldman**, and **Leila Feldman**<br><br>Defendants. | Case No. 26-cv-6037 |

## COMPLAINT

1. When a real estate developer sets up an undercapitalized shell company, induces a lawyer to provide services to the shell company, and then refuses to pay for those services, a money judgment should be entered against the shell company and the developer. Here, Meltzer, Purtill & Stelle LLC represented 1400 Milwaukee Avenue Owner LLC in connection with a possible real estate transaction, but statements totaling $96,186 have gone unpaid for nearly three years. Because 1400 Milwaukee was a purposefully undercapitalized company that acted as a mere façade for its owners and affiliates (the other defendants), judgment should be entered against all defendants for the unpaid statements.

## JURISDICTION AND VENUE.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because (a) the plaintiff is a citizen of the State of Illinois and

the defendants are, on information and belief, citizens of the State of New York, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Plaintiff Meltzer, Purtill & Stelle LLC ("MPS") is an Illinois limited liability company.

4. The owners of MPS are individuals who are residents and citizens of the State of Illinois. Therefore, MPS is a resident and citizen of the State of Illinois.

5. 1400 Milwaukee Avenue Owner LLC ("1400 Milwaukee") is a Delaware limited liability company.

6. At all times relevant to this complaint, David Mitchell was a managing member of 1400 Milwaukee. Mitchell is a resident and citizen of the State of New York.

7. At all times relevant to this complaint, Leila Feldman was a managing member of 1400 Milwaukee. Leila Feldman is a resident and citizen of the State of New York.

8. On information and belief, at all times relevant to this complaint, Ziel Feldman was a member of 1400 Milwaukee. Ziel Feldman is a resident and citizen of the State of New York.

9. Because its members are citizens and residents of the State of New York, 1400 Milwaukee is a citizen and resident of the State of New York.

10. GoodHomesCo LLC is a Delaware limited liability company.

11. On information and belief, David Mitchell, Leila Feldman, and Ziel Feldman are the members of GoodHomesCo.

12. Because its members are citizens and residents of the state of New York, GoodHomesCo is a citizen and resident of the State of New York.

13. GoodHomes Communities LLC is a Delaware limited liability company.

14. On information and belief, David Mitchell, Leila Feldman, and Ziel Feldman are the members of GoodHomes Communities.

15. Because its members are citizens and residents of the state of New York, GoodHomes Communities is a citizen and resident of the State of New York.

16. This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## COMMON FACTS.

### 1. The Feldmans and Mitchell create a shell company to redevelop real estate in Illinois.

17. Ziel Feldman, Leila Feldman, David Mitchell, and their business associates own and operate an array of companies under the "GoodHomes" brand that focus on acquiring well-located, under-performing hospitality and senior housing assets and converting them into housing.

18. In 2021 or 2022, the Feldmans and Mitchell began the process of acquiring a Renaissance Hotel located at 1400 Milwaukee Avenue in Glenview, Illinois (the "Property") for purposes of redeveloping it and converting it to multi-family residential use (the "Project").

19. On February 2, 2022, the Feldmans and Mitchell formed 1400 Milwaukee in Delaware.

20. Despite intending to use 1400 Milwaukee to purchase real estate in Illinois, the Feldmans and Mitchell never registered that company in Illinois.

21. 1400 Milwaukee is a project-specific single-purpose entity that had no assets. 1400 Milwaukee's only potential value was tied to its potential interest in the Property and the construction of the Project.

22. On or about February 9, 2022, 1400 Milwaukee entered into a purchase and sale agreement (the "Sale Agreement") with the owner of the Property (the "Seller") in furtherance of their plan to construct the Project.

23. The Sale Agreement provided 1400 Milwaukee a specified period of time to obtain various required land use approvals (the "Approvals") from the Village of Glenview (the "Village").

**2. The Feldmans and Mitchell hire MPS to represent the shell entity in obtaining Village approvals, but they fail to fully satisfy their obligation to pay for those services.**

24. On March 14, 2022, Mitchell reached out to MPS partner Harold W. Francke to discuss the possibility of MPS representing 1400 Milwaukee as land use counsel in the pursuit of the Approvals.

25. At the time, Mitchell informed MPS that he and Leila Feldman were the managing members of 1400 Milwaukee.

26. On March 21, 2022, attorney Francke sent Mitchell a proposed engagement agreement which identified Mitchell and Leila Feldman as its Managing Members.

27. On April 5, 2022, Leila Feldman signed the engagement agreement, confirming her position as a Managing Member of 1400 Milwaukee, and sent it by email to Attorney Francke, with Mitchell and Ziel Feldman being included on that email. A copy of the signed engagement agreement is attached to this complaint as **Exhibit 1** (the "Engagement Agreement").

28. In the Engagement Agreement, 1400 Milwaukee agreed to pay MPS for legal services it rendered in pursuing the grant of the Approvals, and it agreed to pay MPS a $7,500 retainer (the "Retainer"), which MPS agreed to deposit in its trust account.

29. 1400 Milwaukee did not have any assets, so GoodHomesCo paid the Retainer via a check drawn on its account no. x1054 at Signature Bank.

30. After 1400 Milwaukee retained MPS, MPS provided legal services to 1400 Milwaukee and issued periodic statements to 1400 Milwaukee identifying services rendered by it in pursuit of the Approvals.

31. At the request of Mitchell, MPS initially issued these statements to 1400 Milwaukee and sent them to that entity in care of GoodHomesCo. Statements sent to this entity are dated April 30, 2022; June 30, 2022; July 31, 2022; August 31, 2022; and October 31, 2022.

32. In early 2023, Mitchell asked MPS to address its statements to GoodHomesCommunities LLC. Statements sent to this entity are dated February 28, 2023; March 31, 2023; April 30, 2023; May 31, 2023; June 30, 2023; and July 31, 2023.

33. The foregoing statements were not paid regularly or in the manner required by the Engagement Agreement.

34. With each monthly statement other than the first-issued statement, MPS sent a Reminder Statement which listed unpaid statements and the amounts remaining outstanding and due MPS.

35. On October 27, 2022, MPS received a wire transfer from GoodHomesCo drawn on a Signature Bank account in the amount of $9,104.50, which MPS applied

to the payment of the statements dated March 31, 2022; April 30, 2022; June 30, 2022; July 31, 2022; and August 31, 2022.

36. On February 13, 2023, MPS received check no. 16117 from GoodHomes Communities #7 in the amount of $13,698.00, which MPS applied to the payment of the statements dated October 31, 2022; November 30, 2022; and December 31, 2022.

37. No further payments of outstanding statements were received by MPS after it received the February 13, 2023, payment.

38. Ultimately, representatives of the Village informed representatives of 1400 Milwaukee and representatives of the Seller that the Approvals would probably not be granted by the corporate authorities of the Village.

39. The Seller, fearing that a formal and final adverse decision by the Village's corporate authorities would negatively impact its ability to file a subsequent application for zoning approvals, then demanded that 1400 Milwaukee withdraw its application seeking the grant of the Approvals.

40. While initially Ziel Feldman and Mitchell objected to doing this, they eventually acceded to the Seller's demand and instructed MPS to withdraw the application.

41. MPS billed 1400 Milwaukee for additional services rendered in discussing and acting on the Seller's application withdrawal request and issues relating thereto.

42. The 1400 Milwaukee/MPS engagement finally ended in July 2023, which was about the time 1400 Milwaukee terminated the Sale Agreement.

43. On September 5, 2023, when it became clear to MPS that no further statements would be paid, MPS applied the Retainer to the payment of the statement dated February 28, 2023.

44. After applying the Retainer, the aggregate amount of unpaid and outstanding MPS statements totals $96,186.

45. Each month after July 2023, MPS continued to send Mitchell and GoodHomes Communities LLC a reminder statement identifying the statements that remained unpaid and the amounts due and outstanding on those statements.

46. MPS sent the latest reminder statement to Mitchell on May 5, 2026. A copy is attached to this complaint as **Exhibit 2**.

47. In addition to the reminder statements, MPS, through Attorney Francke, had communications, by email and text message, with Ziel Feldman and/or Mitchell about the unpaid statements.

48. In some of these communications, MPS offered discounts and payment terms in an attempt to induce at least partial payment of the unpaid statements, but these offers were never responded to or accepted.

49. No person—not Mitchell, not the Feldmans, not 1400 Milwaukee, not GoodHomesCo, not GoodHomes Communities—raised any timely objection to any of the statements or the amounts identified on the reminder statements as remaining due and outstanding. Only in March 2026, in response to MPS's outside counsel demanding payment of the past-due amounts, did a GoodHomes representative assert that there was any dispute over the amounts due to MPS.

## COUNT 1: ACCOUNT STATED.

50. MPS incorporates the allegations in paragraphs 1 to 49 above into this count.

51. Beginning as early as August 2023 and continuing to May 5, 2026, MPS sent reminder statements to Mitchell on a monthly basis confirming the amount due to MPS under the statements issued between February and July 2023.

52. The amounts were owed pursuant to the Engagement Agreement.

53. The statements and reminder statements were addressed to GoodHomes Communities pursuant instructions from Mitchell.

54. No person timely disputed or objected to the amount due MPS as set forth in the statements and reminder statements.

55. The failure of 1400 Milwaukee or GoodHomes Communities to timely dispute or object to the amount due MPS as set forth in the statements and reminder statements has established an account stated.

56. The Feldmans and Mitchell created 1400 Milwaukee as a shell company for themselves and their other entities, GoodHomesCo and GoodHomes Communities.

57. On information and belief, 1400 Milwaukee had no assets when it was formed or throughout its operation.

58. Initially, MPS was directed to send statement to 1400 Milwaukee in care of GoodHomesCo and payment MPS received in fact came from GoodHomesCo.

59. In 2023, Mitchell specifically directed MPS to address its statements to GoodHomes Communities and send them to him.

60. 1400 Milwaukee, GoodHomes Communities, and GoodHomesCo therefore acted as a single economic entity.

61. Despite intending to purchase real estate and operate in Illinois, the Feldmans and Mitchell never registered 1400 Milwaukee with the Illinois Secretary of State.

62. By failing to register 1400 Milwaukee in Illinois, the Feldmans and Mitchell made it more difficult for parties dealing with 1400 Milwaukee to seek relief against 1400 Milwaukee in Illinois courts.

63. As the members of 1400 Milwaukee, the Feldmans and Mitchell benefitted by comingling the operations of 1400 Milwaukee, GoodHomes Communities and GoodHomesCo.

64. Specifically, 1400 Milwaukee was able to appear as a functioning company, hiring professionals and entering into a contract to purchase real estate despite having no assets whatsoever, while in reality it was only a shell company to protect the Feldmans, Mitchell, GoodHomesCo and GoodHomes Communities from liability should they decide to stop funding 1400 Milwaukee.

65. Even after word was received that the corporate authorities of the Village were unlikely to grant the Approvals, Ziel Feldman and Mitchell continued to ask MPS to perform legal work that Ziel Feldman and Mitchell knew 1400 Milwaukee had no ability to pay for.

66. Given the failure to adequately capitalize 1400 Milwaukee; the operation of 1400 Milwaukee, GoodHomesCo, and GoodHomes Communities as a single economic unit; the failure to register 1400 Milwaukee in Illinois; and the request by the Feldmans and Mitchell that MPS continue to work despite knowing that 1400 Milwaukee had no ability to pay, it would be inequitable to uphold the legal

distinction between 1400 Milwaukee, GoodHomesCo, GoodHomes Communities, the Feldmans, and Mitchell.

**Wherefore**, MPS asks this Court to enter a judgment in its favor and against 1400 Milwaukee, GoodHomesCo, GoodHomes Communities, the Feldmans, and Mitchell in the amount of $96,186, plus costs and pre-judgment interest, and grant any other appropriate relief.

## COUNT 2: BREACH OF CONTRACT.

67. MPS incorporates the allegations in paragraphs 1 to 49 and 56 to 66 above into this count.

68. Paragraph 5 of the Engagement Agreement requires payment of issued statements within 30 days after the date of each statement.

69. MPS performed legal services pursuant to the Engagement Agreement from March 2022 to July 2023.

70. MPS issued statements in February, March, April, May, June, and July 2023 reflecting legal services rendered by it.

71. MPS received no payment on these statements other than when it applied the Retainer to the partial payment of the February 2023 statement.

72. The total amount due on these statements (after receipt of two previously received payments and the application of the Retainer) is $96,186.

73. MPS has made repeated demands for payment of the unpaid amounts.

74. Despite these demands, the statements and the amount outstanding remain unpaid.

75. For the reasons stated above, GoodHomesCo, Good Homes Communities, the Feldmans, and Mitchell are liable for the amounts that 1400 Milwaukee owes MPS.

**Wherefore**, MPS asks this Court to enter a judgment in its favor and against 1400 Milwaukee, GoodHomesCo, GoodHomes Communities, the Feldmans, and Mitchell in the amount of $96,186, plus costs and pre-judgment interest, and grant any other appropriate relief.

## COUNT 3: FRAUD.

76. MPS incorporates the allegations in paragraphs 1 to 49 and 56 to 66 above into this count.

77. The Feldmans and Mitchell set up 1400 Milwaukee as a shell company with no assets.

78. Because 1400 Milwaukee had no assets, it would not be able to pay any bills. Further, if someone sued 1400 Milwaukee for unpaid bills or for any other reason, any judgement would be essentially worthless as there would be no assets to collect.

79. Instead, GoodHomesCo and GoodHomes Communities paid some of 1400 Milwaukee's bills, including amounts owed to MPS.

80. By setting up their affairs in this way, the Feldmans, Mitchell, GoodHomesCo, and GoodHomes Communities were able to pursue the acquisition of real estate in Illinois without any worry that they might face liability if the acquisition did not proceed. Instead, they would be able to "skip town", leaving professionals and other service providers unpaid.

81. When it became clear that the corporate authorities of the Village were unlikely to approve the Project, 1400 Milwaukee terminated the Sale Agreement and, in response to the Seller's demand, withdrew the application it had submitted to the Village seeking the grant of the Approvals.

82. Knowing that they had failed to capitalize 1400 Milwaukee, that 1400 Milwaukee had no funds and no prospect of obtaining funds, and that MPS would essentially have no remedy if its statements went unpaid, the Feldmans and Mitchell asked MPS to do more legal work even after they had been advised that the corporate authorities of the Village were unlikely to grant the Approvals.

83. After MPS provided these legal services, 1400 Milwaukee did not pay MPS's statements; nor did GoodHomesCo or GoodHomes Communities as they had in the past.

84. The defendants never informed MPS that 1400 Milwaukee had no assets or ability to pay for MPS's legal services.

85. The natural consequence of these acts—and the presumed intent of the defendants—is that the defendants induced MPS to perform services for an entity that had no ability to pay for those services. This allowed the defendants to gain the benefit of MPS's services knowing that they would not have to pay for those services.

**Wherefore**, MPS asks this Court to enter a judgment in its favor and against 1400 Milwaukee, GoodHomesCo, GoodHomes Communities, the Feldmans, and Mitchell in the amount of $96,186, plus costs, pre-judgment interest, and attorneys' fees, and grant any other appropriate relief.

Dated: May 22, 2026

Respectfully submitted,

**Meltzer, Purtill & Stelle LLC**

By: /s/ Jeffrey K. Paulsen
One of Its Attorneys

Jeffrey K. Paulsen (6300528)
Paulsen+HoltschlagLLC
1245 S. Michigan, No. 115
Chicago, IL 60605
Tel: (847) 644-9385
E-mail: jpaulsen@ph-firm.com

# EXHIBIT 1

MPSLAW
MELTZER, PURTILL & STELLE LLC

ATTORNEYS AT LAW

1515 EAST WOODFIELD ROAD
SECOND FLOOR
SCHAUMBURG, ILLINOIS 60173-5431
TELEPHONE (847) 330-2400
FAX (847) 330-1231

300 SOUTH WACKER DRIVE
SUITE 2300
CHICAGO, ILLINOIS 60606-6704
TELEPHONE (312) 987-9900
FAX (312) 987-9854

Direct Dial: 847-330-6068
E-mail: hfrancke@mpslaw.com

**CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

March 21, 2022

1400 Milwaukee Avenue Owner LLC
c/o GoodHomesCo LLC
600 Madison Avenue, 24th Floor
New York, NY 10022
Attention: David Mitchell or Leila Feldman, its Managing Members

Re: Engagement Agreement for Legal Services/Glenview

Dear David and Leila,

As a matter of firm policy, Meltzer, Purtill & Stelle LLC ("MPS Law") requests that new clients sign and return an engagement agreement outlining the nature and scope of legal services to be performed and the terms of our representation. This agreement describes the nature of our engagement for 1400 Milwaukee Avenue Owner LLC, a Delaware limited liability company (the "Company"), as we understand it, explains our essential business practices, and sets forth the basic terms upon which we render services to our clients. In this letter, the words "it" and "its" refer to the Company, the words "you" and "your" refer to each or both of you as the context may require, and the words "we", "us" and "our" refer to MPS Law.

By engaging MPS Law, the Company understands and agrees to each of the following terms and conditions:

1. Professional Undertaking. At the Company's request, we will assist the Company in its pursuit of land use approvals from the Village of Glenview that will facilitate the reuse of the Renaissance Hotel property situated at 1400 Milwaukee Avenue for multi-family residential use (the "Project"). I will have primary responsibility for the representation of the Company by MPS Law. If for any reason you wish to discuss any aspect of our engagement, please do not hesitate to contact me. If the Company engages us to work on matters that are other than the Matter, this agreement will serve as the basis for those additional engagements unless we agree otherwise in writing.

2. Fees. The billing for our services reflects several factors, including the complexity of the engagement and the time required to complete the engagement. The principal factor is our schedule of hourly rates and most statements for services rendered are the product of the time worked multiplied by the hourly rates for the attorneys and legal assistants who performed the work. The Company will be billed for the time we devote to Company matters. My current hourly rate is $695. The other attorneys who may render services on the Matter are my partner Andrew Chamberlain and Jesse Dodson, who acts in an "Of Counsel" capacity to MPS Law. Andrew's

current hourly rate is $365 and Jesse's current hourly rate is $525. The hourly billing rates for other attorneys who may work on the Matter range from $325 to $730. The hourly billing rates for paralegals who may work on the Matter range from $245 to $425. The schedule of hourly rates for attorneys and other members of our professional staff is based on years of experience, areas of practice, and level of professional attainment. These rates are reviewed periodically and are sometimes revised at the beginning of each calendar year.

3. Retainer. Because the Company will be a new client of MPS Law, we will require the payment of a retainer in the amount of $7,500.00, which amount will be deposited in our trust account for the Company's benefit. We will continue to hold these funds in trust and will bill the Company monthly for services rendered. We reserve the right to apply the funds being held in trust to pay any statement the Company fails to pay within 60 days of its date. To the extent the retainer is depleted, we may ask that it be restored. Any funds remaining in trust after we have completed our work on the Matter and all statements have been paid will be refunded to the Company.

4. Costs. Often, it is necessary for us to incur expenses on behalf of our clients for items such as filing fees, outside photocopying services and outside messenger or overnight delivery services. The Company is responsible for such costs to the extent we incur them on its behalf relating to the Matter. In order to allocate these costs fairly and to keep our hourly rates as low as possible for those matters that do not involve such expenditures, these items are separately itemized on our statements as "costs advanced" or "disbursements." If the services of outside experts are required by the Company, we will expect the Company to retain and pay those experts directly.

5. Billing. Our statements generally will be prepared and mailed promptly following the month in which services are rendered and costs are advanced. Billing statements will consist of entries describing the nature of the work, the individuals who performed the work, and the amount of time devoted to such work. Payment is due 30 days after the date of the statement.

6. Use of Email. Unless the Company objects, we will utilize email as a means of communication with it and others whenever possible. The Company should be aware that the use of email as a means of communication is not a fully secure means of communication, with interception of email by others possible (which interception could compromise client confidences). In addition, we reserve the option to email bills, letters and other communications to the Company. If you would prefer that we not utilize email, please let us know in writing as soon as possible and we will discuss other means of communication. If we do not hear from you, we will utilize email from time to time in our engagement.

7. Termination. The Company has the right to terminate our representation by written notice or email at any time. If it elects to exercise that right, it will not be relieved of the obligation to pay for any services rendered or costs advanced at the request of and on behalf of the Company prior to the date we receive such notice. We have the same right to terminate our representation, subject to our obligation to give the Company reasonable notice so that it may arrange alternate representation. Unless terminated earlier, our representation of the Company on the Matter will terminate automatically upon the Company's receipt of our statement first reflecting completion

of substantive legal services related to the Matter. Subsequent statements sent to collect expenses and/or unpaid balances, and the state of our accounting or business records or client lists, will not extend the attorney-client relationship with respect to the Matter.

8. Disclaimer of Guarantee. Nothing in this engagement agreement should be construed as a promise or guarantee about the outcome of the Matter. Our comments about the outcome of the Matter are expressions of opinion only.

9. Applicable Law. The laws of the State of Illinois, other than the law of conflicts, will govern the interpretation of these agreed terms and conditions, including all Illinois rules or codes of ethics which apply to our provision of services.

10. Records Retention and Disposal. Upon conclusion of the Matter, the Company may request that its files in the Matter, be they electronic or paper files, be sent to it. If so, we reserve the right, at our own discretion and expense, to retain a copy of all or part of the files the Company requests. If the Company does not request its files, then we will retain the electronic files for a period of seven years following the conclusion of the Matter. Thereafter, unless we receive written instructions from the Company to the contrary, we may destroy or delete the files, consistent with maintaining confidentiality, without further notice.

11. Consultation with Counsel. In the course of representing the Company, we may consult with our own counsel on our own behalf and without cost to the Company, whether outside counsel or attorneys within MPS Law who do not perform work for the Company on the Matter, regarding our engagement for the Company on one or more aspects of that engagement. To the extent we are addressing our rights or responsibilities, a conflict of interest might be deemed to exist between MPS Law and the Company, particularly if a dispute were to arise between us and the Company regarding the Matter. The Company hereby consents to such consultation and waives any claim of conflict of interest based on such consultation or resulting communications that could otherwise disqualify us from acting on our own behalf, even if doing so might be deemed adverse to the Company's interests. The Company acknowledges that such communications are protected by our own attorney-client privilege from disclosure to the Company.

If you have any questions about any aspect of our arrangements or our statements from time to time, please feel free to discuss those questions with me.

If we have properly described the scope of the services we are to render to the Company and if the terms of our engagement are satisfactory to it, please confirm the same by signing and returning a copy of this agreement to me.

MPSLAW



We appreciate and thank you for giving us this opportunity to represent the Company.

Very truly yours,

**MELTZER, PURTILL & STELLE**

Harold W. Francke

ACCEPTED AND AGREED TO:

This __ day of March 2022

**1400 Milwaukee Avenue Owner LLC, a Delaware limited liability company**

By: ________________________________
Name: Leila Feldman, One of Its Managing Members

# EXHIBIT 2

MPSLAW
MELTZER, PURTILL & STELLE LLC

1450 AMERICAN LANE, SUITE 1900
SCHAUMBURG, ILLINOIS 60173
TELEPHONE (847) 330-2400
FAX (847) 892-4106
F.E.I.N 36-4053995

May 04, 2026

Good Homes Communities LLC
David Mitchell
dmitchell@goodhomesco.com
32 Court Street, PH
Brooklyn, NY 11201

Client: 36285
Matter: 001
Billing Atty.: HWF

# REMINDER STATEMENT

**RE: Glenview, IL Land Use Entitlements**

| Invoice Number | Invoice Date | Fees | Expenses | Invoice Total | Payments / Credits | Balance |
|---|---|---|---|---|---|---|
| 00200397 | February 28, 2023 | 8,906.00 | 0.00 | 8,906.00 | 7,500.00 | 1,406.00 |
| 00201401 | March 31, 2023 | 11,680.00 | 0.00 | 11,680.00 | 0.00 | 11,680.00 |
| 00201798 | April 30, 2023 | 30,527.50 | 0.00 | 30,527.50 | 0.00 | 30,527.50 |
| 00202690 | May 31, 2023 | 20,356.00 | 0.00 | 20,356.00 | 0.00 | 20,356.00 |
| 00203175 | June 30, 2023 | 21,337.50 | 0.00 | 21,337.50 | 0.00 | 21,337.50 |
| 00203949 | July 31, 2023 | 10,879.00 | 0.00 | 10,879.00 | 0.00 | 10,879.00 |
| | | | | | **Total Amount Due:** | **$96,186.00** |

*Note: Last payment of $ 7,500.00 was received/applied on September 05, 2023

# AGED ACCOUNTS RECEIVABLE

| 0 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91 - 120 Days | Over 120 Days |
|---|---|---|---|---|
| - | - | - | - | 96,186.00 |